Good morning, Matthew Dunsing. May it please the court. I'm here on behalf of the appellants, Captain Kyle Coleman and the motor vessel One Love. So you represent both entities, correct? I do. That's correct. First of all, I'd like to address our argument that the trial court did not have jurisdiction to hear this matter. There was no admiralty jurisdiction. Mr. Hargus originally sued my clients in January of 2013. I noticed in the opinion that the district court uses the term admiralty and maritime law interchangeably. Is there a distinction from your standpoint? Not from my standpoint. Admiralty refers really more generally to the setting, and then maritime law refers to the particular rulings and common law related to that setting is how I understand it, Your Honor. But Mr. Hargus originally filed suit in January of 2013 in our local superior court. There was never any basis for diversity jurisdiction here. We have Virgin Islands parties on both sides of the equation. That case progressed for about 10 months. The jurisdictional hook is admiralty law. That's correct. Basically, after the local case progressed for about 10 months, Mr. Hargus decided he wanted to try to arrest my client's boat, which was a little simple 26-foot power boat. At that point, he basically filed the same case all over again in federal court, but he added an additional defendant, that being the motor vessel One Love. And based upon the claim against the motor vessel One Love, he alleged that he had admiralty jurisdiction at that point under 28 U.S.C. 1333-1. Let me ask you about the jurisdictional issue here and the significant relationship to a traditional maritime activity. The facts here, as I understand them, are the boat goes to harbor. Some of the passengers and the captain get out on shore. Plaintiff is on the boat. People start throwing things at the plaintiff, and the captain joins in the frolics and hits him with a coffee mug in the head. So if a captain assaults a passenger, you're saying that wouldn't satisfy the jurisdictional hook, so to speak? Well, there are some cases where that would, and we have a little different situation here. First of all, and it's clear you have to have both situs on navigable waters. Well, it is, actually. We didn't address it perhaps as fully as we should have in our brief, but we have an issue with both situs and nexus here. First of all, to address the nexus issue, we do not believe that this kind of horseplay occurring on the beach has any kind of connection to a traditional maritime activity. In fact, the trial court... The boat was in the water, wasn't it? The boat was in the water, but the captain was on the shore. And that's another important ingredient. Involve a captain of a ship who is responsible for the safety and welfare of the boat's or the ship's passengers. That's correct. But if you look at, for example, the appendix at 41, the trial court specifically found the evidence demonstrates that plaintiff's injury was unrelated to the captain's operation of the vessel. Operation in the sense of what? Steering the vessel? He's not steering the vessel. He's not driving the vessel. He's not docking the vessel. He's not assisting passengers with ingress and egress. There's no authority of the captain of the ship, and the captain of the ship bears responsibility for the safety of the passengers. That's correct. And in that sense, he was not acting safely for the passengers. What if the captain had thrown the mug at the plaintiff while he was on the boat? Would that change your analysis? That would certainly mean that the tort occurred on navigable waters. For example, this case in many... Isn't that what happened? No, we don't believe that it did. In many ways, this is like... Where was the plaintiff? The plaintiff was seated on the boat. The captain was actually ashore on the beach when he tossed the mug. In many ways, this is like the executive jet decision where the Supreme Court found that the jet was cleared for takeoff from the airport. It then crashed into Lake Erie in navigable waters. The Supreme Court ultimately found that the tort actually occurred on land when the jet was cleared for takeoff. The damages occurred on navigable waters where the jet sank. Quite frankly, even though we're talking about a plastic coffee mug rather than an aircraft, we don't have a lot of difference in the sense that the tort actually occurred when the captain tossed the cup. Well, the alleged tort, because we don't believe he's actually proven damages with reasonable certainty. But the alleged tort actually occurred on land when he tossed the cup toward the boat, and then whatever harm that was alleged did occur on navigable waters. There's a case, I don't have the name right now, where a member of the crew left the boat, went to land, and assaulted a passenger of the boat on land also. In fact, it was a sexual assault. That was determined to be subject to admiralty law in federal court jurisdiction. Well, and that may be, I'm not... And this one is even closer to admiralty because the plaintiff was in the boat. That may be, but we also have cases where you have activities in and around the water, and they're determined not to be traditional maritime activities. I mean, for example, the Tandon case out of the Second Circuit in 2014, which also involved tossing a beer bottle. That was a fight on a pier, right? It was a fight on a pier with a plaintiff who actually fell into the ocean and was held underwater in the ocean, supposedly. And, you know, the court said the fact that you have this altercation occurring on the pier, around the boats, and in the water doesn't necessarily give rise to admiralty jurisdiction. That's very different than a situation where you have the captain of the vessel throwing things at one of his passengers. Yeah, but the captain, when he's doing that, he's not doing anything in service of the ship. He's actually acting contrary to the service of the ship. But what do we look at? Do we look at whether the conduct had any effect on shipping or commercial shipping, whether it disrupt the passage of the ship, or do we look at where the tort occurred, or do we look at the consequences? Well, first of all, you have to look at where the tort occurred. That would be the situs, and we submit that the tort actually occurred on land here. Does the tort occur when an object is thrown, or is it where the injury occurs? According to the Supreme Court in Executive Jet, it occurs where the cup is thrown. In that case, Executive Jet, the harm occurred when the jet sank in navigable waters. The Supreme Court said, no, the tort actually occurred when the jet was cleared for takeoff on land. So, first of all, you're looking at the situs. Second of all, we also have to look at the other two factors that Your Honor mentioned. You have to look at, first, what's the nature of the activity generally? Not the specific action, but sort of the general features, general character of the activity. Is this something that is connected to a traditional maritime activity? Then you also have to look at the potential impact upon maritime commerce. What about the relationship of the parties? Isn't it significant that we're talking about the boat's captain and one of the passengers? Well, it may be, but you have to recall that the captain was working for the passengers. He was not working for the owner of the boat. The captain was specifically hired by the passengers. And, in fact, the trial court expressly found that you could not impute liability of the captain to the owner of the boat because he wasn't acting as an agent for the owner of the boat. But notwithstanding that, the judge ultimately imputed, well, while the judge did not impute liability to the owner of the boat, the judge ultimately did impute liability to the boat itself, even though the captain was hired by and paid for by the passengers themselves. In rem action is authorized solely by the conclusion that this is an admiralty case. Is that fair to say? I would agree with that, yes. All right, so if we conclude that this is an admiralty case, then the in rem action is justified. Well, if you conclude that there was a maritime tort and then that maritime tort gave rise to a maritime lien, then there would be admiralty jurisdiction. What about liability, in rem liability for the vessel? I don't agree with that. I don't believe that it's appropriate. Basically, the vessel, from your position, the vessel had nothing to do with the injury, right? That's correct. So from your position, assuming you're arguing that the vessel, therefore, is not liable in rem. That's correct, because the captain, the cases that the court relied upon, and basically she's unifying the vessel and the captain as one and the same. So she says the liability of the captain equates to liability of the vessel. But the cases that the court relied upon that are cases where you have a captain who's acting in the service of the ship, and typically you have both a captain and crew, and they're both in service of the ship, or a captain who's actually in service of the ship and injures a passenger through traditional type maritime activity, like navigating the ship negligently, not giving proper instructions for passengers to get on or off the ship. What we have here is basically a captain who was hired by the passengers, who was not even on the boat, who was standing ashore. The captain, of course, the captain is an agent of the boat's owner, isn't he? No, in fact, the court specifically found that the captain was not an agent of the boat's owner here, and that's why the trial court dismissed the claims against the boat's owner. The owner of the boat simply rented the boat, a little 26-foot power boat, rented the boat to the passengers. Then the passengers specifically hired the captain, and passengers specifically paid the captain at the end of the day. So the captain was actually working for the passengers. So the trial court specifically found that there was no liability imputed to the owner of the boat. But the trial court, back briefly to the jurisdictional issue, the trial court never did any jurisdictional analysis. The trial court never went through the situs or nexus analysis. The trial court just simply proceeded from the assumption that this was a maritime tort, and therefore there was a maritime lien, and we feel it was inappropriate for the court to do that. One sentence is all we have. Correct. One sentence is all we have, and if I may. The tort was essentially because there was an injury on a vessel that was in needy water. Is that basically the analysis? Well, I can only assume that's why the court felt that it was a maritime tort. Again, we submit that the tort actually occurred on land where the captain was standing when he tossed the cup. But in any event, there'd have to be a showing that there was a potentially disruptive effect on maritime commerce for admiralty jurisdiction to exist. Absolutely, Your Honor, and we submit that there was absolutely no such showing in this case. In fact, the court didn't even analyze the issue. That was not the focus of the court's decision in that incident involving a sexual assault by a ship. A crewman and one of the passengers. Well, Your Honor, I am not as familiar with the facts of that case as perhaps Your Honor is. I can only assume that the crewman must have still been on duty at the time working for the ship itself, which here we have a situation where, first of all, the captain was not working for the owners, was not working for the boat, he was working for the passengers themselves, and he was not doing anything to operate the boat at the time. Did you address the damages issue at the time you have left? Yes, I would, Your Honor. The damages issue, the court's damages award, in our view, was pure speculation, pure conjecture, and absolutely contrary to the court's own express findings. The court expressly found that there was no proof of lost wages, past or future. The court expressly found there was no proof of medical expenses, past or future. The court expressly found there was no proof of any permanent injury, separate and distinct, from the plaintiff's own history of 10 or 12 prior concussions, and using the court's own words at appendix 35, the court said that the weight of the medical testimony establishes only a mere possibility that the incident gave rise to symptoms or some aspect of injury or damages. So basically, the court made all of these findings that the plaintiff had not proven damages with any kind of reasonable certainty, which is both the law of this circuit and our local law, but contrary to all of those express findings, then the court basically made a $50,000 damage award with no reasonable basis whatsoever. Did you file your case in separate jurisdictions? I'm sorry? Is your case solely in federal court? The plaintiff still has the other case pending in the superior court. That case has been stayed basically pending decision here. So if we were to agree with you that this case does not implicate admiralty law, then the case goes back to Virgin Islands Territorial Court? That's correct, and none of the findings of the trial court here would be binding upon the territorial court. And the territorial court would therefore not have jurisdiction over the in-rem proceeding? That's correct. The case would proceed against all of the defendants other than the boat. Other than the boat. Right. Judge Vernaschi? I have no other questions. Very good. Thank you, Your Honor. Thank you very much. I appreciate it.